639 A.2d 1215

Sarah MAXWELL, Appellant,

v.

Charles KEAS and Patricia Keas, Appellees.

Superior Court of Pennsylvania.

Argued Nov. 9, 1994.

Filed April 7, 1994.

Reargument and Reconsideration Denied June 17, 1994.

Karen L. Saraco, Langhorne, for appellant.

Leigh A.J. Ellis, Harrisburg, for appellees.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

WIEAND, Judge:

While Charles and Patricia Keas were away from their home and on vacation, their 19 year old daughter, Kimberly, received a nocturnal visit from Kenneth Maxwell.[1] Kimberly and Kenneth entertained themselves by consuming alcoholic beverages found on a shelf in the Keas's home. After they had consumed an undetermined amount of alcohol,[2] Kimberly became angry, obtained a knife from the kitchen and stabbed Kenneth in the chest and abdomen, causing him to bleed to death.[3]

Sarah Maxwell, the administratrix of Kenneth's estate, filed an action against Charles and Patricia Keas in which she alleged that the defendants had been negligent in failing to prevent their daughter from gaining access to alcohol when they knew or should have known that she was addicted to it. After the pleadings had been closed and discovery completed, the defendants moved for summary judgment. The trial court granted it, and plaintiff appealed. We affirm.

"A motion for summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Kerns v. Methodist Hospital,* 393 Pa.Super. 533, 536, 574 A.2d 1068, 1069 (1990). In determining whether summary judgment was properly granted, a reviewing court will examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *E.J.M. v. Archdiocese of Philadelphia,* 424 Pa.Super. 449, 453, 622 A.2d 1388, 1390 (1993).

**1.** Kimberly's 75 year old grandmother, who was also at home, had already retired for the night.

**2.** There was deposition testimony that both persons had been drinking before Kenneth arrived at the Keas's home.

**3.** Kimberly entered a plea of guilty to murder of the third degree and is now serving a sentence of imprisonment.

 Liability cannot be imposed upon the defendant-appellees merely because they are the parents of Kimberly. *Condel v. Savo,* 350 Pa. 350, 39 A.2d 51 (1944); *In re Weiner,* 176 Pa.Super. 255, 106 A.2d 915 (1954). Similarly, they are not liable merely because Kenneth met his death in their home while they were on vacation. *Martinelli v. Peters,* 413 Pa. 472, 198 A.2d 530 (1964). In order to impose liability upon the defendant-appellees, it must be shown that there existed a duty which they owed to appellant's decedent and that this duty was breached and caused the decedent's death. As the Supreme Court observed in *Orner v. Mallick,* 515 Pa. 132, 527 A.2d 521 (1987), a plaintiff must show:

> the existence of a duty or obligation recognized by law; a failure on the part of the defendant to conform to that duty, or a breach thereof; a causal connection between the defendant's breach and the resulting injury; and actual loss or damage suffered by the complainant.

*Orner v. Mallick, supra* at 135, 527 A.2d at 523. See also: *Morena v. South Hills Health System,* 501 Pa. 634, 642 n. 5, 462 A.2d 680, 684 n. 5 (1983). Where there is no duty of care, there can be no negligence. *Zanine v. Gallagher,* 345 Pa.Super. 119, 123, 497 A.2d 1332, 1334 (1985). The existence of a duty is predicated upon the relationship between the parties at a specific point in time; "if the parties are strangers, the scope of the duty not to place others at risk is limited to those risks which are reasonably foreseeable." *Burman v. Golay and Co., Inc.,* 420 Pa.Super. 209, 214, 616 A.2d 657, 659 (1992), *allocatur denied,* 533 Pa. 648, 624 A.2d 108 (1993). See also: *Zanine v. Gallagher, supra* at 123, 497 A.2d at 1334.

 Here, there is no basis for imposing upon appellants a duty owed to an unanticipated visitor of their daughter, an adult person living in their home. Not only did they have no reason to anticipate the decedent's presence in their home, but, in fact, Kimberly had been told that she was not to have visitors in the home while her parents were on vacation. The absence of a duty owed to Maxwell was not altered by virtue of the fact that the parents kept alcoholic beverages in their home.

■ Appellant argues, however, that appellees were social hosts and, therefore, liable for injuries inflicted by their daughter after she had illegally consumed alcoholic beverages which they kept in their home. Appellant relies on *Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515 (1983) and its progeny. In *Congini*, the minor had been served alcoholic beverages by his employer at a Christmas party, became intoxicated and, after leaving the party, drove his vehicle into collision with another vehicle on a public highway. Reasoning that the employer was a social host, the Court held that the employer was "negligent per se in serving alcohol to the point of intoxication to a person less than twenty-one years of age, and ... liable for injuries proximately [caused by] the minor's intoxication." *Congini v. Portersville Valve Co.*, *supra* at 162–163, 470 A.2d at 518 (footnotes omitted). In *Orner v. Mallick*, *supra*, the social host doctrine was applied where the defendant host had provided alcoholic beverages which she knew would be consumed by minors at a graduation party for her daughter.

However, in *Alumni Ass'n, Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan*, 524 Pa. 356, 572 A.2d 1209 (1990), where an 18 year old college student had openly consumed alcohol during a party hosted by the Kappa Chapter of Sigma Chi Fraternity, the Court held that neither the university nor the national fraternity could be held liable for fire damage caused by the student. Neither the university nor the national fraternity had actual knowledge that alcohol was being furnished to a minor. The "knowingly furnished" standard for social host liability, the Court said, "requires actual knowledge on the part of the social host as opposed to imputed knowledge imposed as a result of the relationship." *Id.* at 364, 572 A.2d at 1212. The Court explained:

[T]here are no allegations that either the fraternity or the University was involved in the planning of these events or the serving, supplying, or purchasing of liquor. The fact that the functions were held on property which arguably was owned by [the fraternity] is of no consequence in light of [its] detachment from the events in question. *Appellees'*

*conduct is insufficient to establish them as social hosts for the purpose of finding potential liability.*

*Id.* at 364, 572 A.2d at 1213 (emphasis added).

Other jurisdictions have placed similar limitations on the potential liability of a social host. In *Kellogg v. Ohler,* 825 P.2d 1346 (Okla.1992), Larry Stogsdill, a minor, became intoxicated while visiting a home owned by James and Marion Ohler but occupied only by their son, Doug, and his friend, Robert Gross. After leaving the Ohler home, Stogsdill was involved in an automobile accident which caused the death of one person and seriously injured another. In affirming a summary judgment entered in favor of the homeowners, the Oklahoma Supreme Court said:

In order to be considered a social host, some degree of control is necessary. In *Solberg v. Johnson,* 306 Or. 484, 760 P.2d 867, 870 (1988), the Oregon Supreme Court defined a social host as "one who receives guests, whether friends or associates, in a social or commercial setting, in which the host serves or directs the serving of alcohol to guests."

It is undisputed that the parents lived in Alabama, did not invite anyone to their Oklahoma home and did not furnish any alcohol to Stogsdill. In fact, both parents stated that they did not know of the gathering until much later. They had absolutely no control over the alcohol served nor the people who consumed it. As a matter of law the parents were not social hosts.

*Id.* 825 P.2d at 1348 (citations omitted). See also: *Forrest v. Lorrigan,* 833 P.2d 873 (Colo.App.1992).

In the instant case, the home owners were in Aruba on vacation. They did not receive or invite Maxwell into their home. Indeed, they had no reason even to anticipate his presence. They did not furnish alcohol for his consumption or authorize their adult daughter to do it on their behalf. On the contrary, the use of alcohol by their daughter and her furnishing alcohol to Maxwell were unauthorized and without the consent of the homeowners. In fact, Kimberly was not allowed to consume her parents' alcohol and had been so

instructed. It follows, under the circumstances of this case, that the parents cannot be deemed social hosts for purposes of imposing vicarious liability upon them.

Appellants also contend that the homeowners were negligent because they took inadequate precautions to prevent their daughter from invading their supply of alcoholic beverages and imbibing illegally in view of her alleged affinity for alcohol. Kimberly, however, was an adult person; and, therefore, a duty cannot readily be imposed upon her parents to provide continuous supervision and control over her daily conduct. This is especially so where, as here, there was no history of violent behavior or reason to anticipate such conduct.

In *Alioto v. Marnell*, 402 Mass. 36, 520 N.E.2d 1284 (1988), Michael Marnell, age 19, had held a party for fellow employees in the home of his parents. The parents knew he had a history of under age drinking and driving while under the influence of alcohol and that he intended to serve alcoholic beverages at the party. Therefore, they conditioned their consent to the party on Michael's promise that he would not drive his car during or after the party. Michael consumed alcoholic beverages during his party and thereafter, while operating his car in an intoxicated condition, collided with another vehicle, killing the driver. An action was commenced against Michael's parents on the grounds that they were negligent in failing to supervise the party hosted by Michael in their home; in failing to prevent Michael, a minor for purposes of consuming alcohol, from obtaining and consuming alcoholic beverages at the party; and in failing to prevent Michael from driving while under the influence of alcohol. In affirming the trial court's grant of summary judgment in favor of the defendant-parents, the court stated as follows:

> This is not a case involving social host liability. . . . Here, there were assertions that the defendants knew or should have known of their son's propensity to drink and drive, because he previously had been involved in incidents involving drinking, and had lost his driver's license for operating a motor vehicle while under the influence of alcohol. . . .

[H]owever, at the time of this incident, Michael Marnell, although below the legal drinking age, was not a minor, but an adult. See G.L. c. 4, § 7, Forty-eighth & Fiftieth (1986 ed.) (defining the terms "Minor" and "Adult"). He had graduated from high school some seventeen months earlier, had been working full-time for at least fourteen months, and was in all relevant aspects emancipated from his parents. The fortuity of his living in their home does not create a duty where none otherwise exists; nor does their status as parents, without more, impose on the defendants the duty to supervise and control their emancipated adult son. See *DePasquale v. Dello Russo*, 349 Mass. 655, 659, 212 N.E.2d 237 (1965); *Smith v. Jordan*, 211 Mass. 269, 270, 97 N.E. 761 (1912).

*Id.* at 39, 520 N.E.2d at 1285–1286.

Similarly, in *Reinert v. Dolezel*, 147 Mich.App. 149, 383 N.W.2d 148 (1985), the court concluded that the defendant-parents were not negligent for failing to prevent their 18 year old son from consuming alcoholic beverages in their home. There, five young adults, each being at least 18 years of age save one, had purchased alcoholic beverages and consumed them in the home of David and Joan Dolezel. When the youths later decided to go to the home of another friend, two of the young adults decided to ride with David Dolezel, Jr.. During the drive, Dolezel's car failed to negotiate a curve and crashed, as a result of which one passenger died and another was injured. An action was commenced against the Dolezel parents on the basis that they negligently had permitted minors to consume alcohol in their home. In finding that no such cause of action existed, the court stated:

Although plaintiff refers to the young people involved in this case as "minors", they were not.... A person who is 18 years of age is deemed to be an adult of legal age for all purposes whatsoever and shall have the same duties, liabilities, responsibilities, rights and legal capacity as persons heretofore acquired at 21 years of age, notwithstanding any other provision of law to the contrary. These people were not minors; they were adults who were not old enough to

drink alcoholic beverages legally. Any duty the parents had to supervise their child's conduct ended when that child became an adult. To make homeowners civilly liable for illegal activity being conducted by adults in their home, of which the homeowners have no part, would be to break new ground in Michigan jurisprudence. The problem of teenagers who drink and drive is a serious one. But we know of no jurisdiction which imposes a duty upon homeowners to stop adults from illegally drinking in their home....

There is no duty to control the conduct of a third party so as to prevent him from causing physical harm to another unless a special relationship exists.... Parents are under a duty to exercise reasonable care to control their minor child, but this duty ends when the child becomes an adult, and that happens in Michigan at age 18.

*Id.* at 157, 383 N.W.2d at 151 (citations omitted).

■ Under the general principle of law set forth in Section 315 of the Restatement (Second) of Torts, there is no duty to control the conduct of a third person so as to prevent him or her from causing physical harm to another in the absence of a special relationship between the actor and the third person. In this case, the trial court properly concluded that there was no special relationship between the homeowners and either their daughter or her guest which was sufficient to impose upon the homeowners a duty to control the conduct of their daughter so as to prevent her from killing her guest during an angry frenzy.

The order entering summary judgment is affirmed.