Argued and submitted November 13, 1996, reversed and remanded March 5, 1997

# Betty L. DODGE,
*Appellant,*

*v.*

# DARRITT CONSTRUCTION, INC.,
a Washington corporation,
registered to do business in Oregon,
*Respondent.*

(95-2021; CA A93209)

934 P2d 591

Allison Tyler argued the cause and filed the brief for appellant.

Ruth Casby Rocker argued the cause for respondent. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Warren, P. J., dissenting.

**EDMONDS, J.**

In this negligence action, the trial court ruled on summary judgment that, as a matter of law, plaintiff's injuries were not caused by a foreseeable risk of harm arising from defendant's conduct or omissions.[1] ORCP 47. Plaintiff appeals, and we reverse.

We consider the facts in the summary judgment record in the light most favorable to plaintiff. ORCP 47 C. During the spring of 1993, plaintiff was employed as a housekeeper for Columbia Memorial Hospital and was working within the scope of her employment when her injury occurred. Defendant was a contractor performing construction work at the hospital. Part of that work involved the pouring of a concrete slab foundation to abut the existing slab foundation of the east wing of the hospital. To perform that task, defendant's employees removed a section of the siding of the existing east wing of the hospital.

On March 14, 1993, water from a rainstorm pooled on the new slab and seeped into the hospital. For purposes of this motion, the parties assume that the water in the hospital resulted from defendant's negligence. Plaintiff's responsibilities as a housekeeper included cleaning up liquids by using vacuum cleaners, mops and other absorbent materials. As part of her job, plaintiff emptied containers filled with liquids. The hospital directed plaintiff to clean up the water that had collected, and plaintiff used a "wet-vac" with an eight-gallon reservoir to accomplish the task. After she finished cleaning up the water and while emptying the "wet-vac" into a bathtub, she injured her neck and right shoulder. The issue is whether plaintiff's injury was a foreseeable consequence of defendant's allegedly negligent conduct in permitting the water to seep into the hospital.

■■ Although the issue of whether an injury is foreseeable is usually one reserved for the factfinder, there are some

---

[1] Summary judgment is appropriate if the moving party can show that the pleadings, depositions and affidavits contain no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243, *rev allowed* 323 Or 483 (1996).

cases in which no reasonable factfinder could find the risk of harm foreseeable. *Hefty v. Comprehensive Care Corporation*, 307 Or 247, 253, 766 P2d 1026 (1988).[2] The test is whether a reasonable factfinder could decide that defendant's "conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). In this case, plaintiff was not injured directly as a result of the accumulation of water. She was injured after she picked up the "wet-vac" to pour the collected water into the bathtub. The negligently created condition no longer existed when she was injured. In the light of those facts, the question is whether defendant's negligence created a generally foreseeable risk of the kind of harm that befell plaintiff.

> "In order to state a negligence claim under principles of general foreseeability, plaintiff's complaint
>
>> " 'must allege facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that *plaintiff's injury was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.*' " *Slogowski v. Lyness*, 324 Or 436, 441, 927 P2d 587 (1996) (quoting *Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867 (1988); emphasis supplied).

Although the resolution of what is a generally foreseeable risk is fact-specific, two of the Supreme Court's decisions are instructive in deciding that issue in this case. In *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 609-10, 469 P2d 783 (1970), the court addressed whether the plaintiff's injury and the manner of its occurrence were foreseeable risks. In that case, the plaintiff was injured when, while fighting a fire that had been caused by the defendant's employee, he fell through a skylight that had been covered in

---

[2] *See also Buchler v. Oregon Corrections Div.*, 316 Or 499, 511 n 8, 853 P2d 798 (1993) (stating that the *Fazzolari* trilogy does not require that all negligence claims reach the jury).

a manner that made it appear to be a solid part of the roof. *Id.* at 605-06. The court held that the risk of harm was foreseeable and explained:

> "This idea of limiting liability to that which can be anticipated is formulated into the foreseeability test for negligence, which states that one is negligent only if he, as an ordinary reasonable person, ought reasonably to foresee that he will expose another to an unreasonable risk of harm. Foreseeability is an element of fault; the community deems a person to be at fault only when the injury caused by him is one which could have been anticipated because there was a reasonable likelihood that it could happen.

> "2.   Thus fault, as the term is usually understood, is not associated with conduct which causes harm through the concatenation of highly unusual circumstances. If, in our appraisal of the community's conception of fault, we find that the conduct in question clearly falls outside the conception, we are charged with the duty of withdrawing the issue from the jury.

> "3.   The specific question before us is, then, whether plaintiff's injury and the manner of its occurrence was so highly unusual that we can say as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur. Stated in another way, the question is whether the circumstances are out of the range within which a jury could determine that the injury was reasonably foreseeable." 255 Or at 609-10. (Footnotes omitted.)

■       As the *Stewart* court pointed out: whether a particular harm is deemed foreseeable may depend on how the risk of harm is characterized. If harm is characterized in a general way, the risk is more likely to be deemed foreseeable *than if it is characterized in a specific manner. Id.* at 610. "*Stewart* itself made clear that the court meant generalized risk of the types of incidents and injuries that occurred rather than the predictability of the actual sequence of events." *Fazzolari,* 303 Or at 13. *Stewart* illustrates the point. The general harm to be anticipated from a dangerous hidden condition of the premises in that case was the potential harm to firefighters called to render emergency aid.[3]

---

[3] In *Stewart* the Court explained that negligent conduct that creates a dangerous condition on property can create a generalized risk of harm in multiple ways.

In contrast, *Hefty v. Comprehensive Care Corporation* illustrates the type of harm that is beyond the general rule of foreseeable harm. 307 Or at 252. In that case, Kimberly, a teenager, was voluntary admitted to the defendant's Adolescent Care Unit for the treatment of alcoholism. *Id.* at 250. Six days after she was admitted, she left the facility against the medical advice of the unit. Neither Kimberly nor the hospital notified her parents that she had left. While riding as a passenger on a friend's motorcycle, she sustained severe head injuries in an accident with an automobile. Neither drugs nor alcohol was a factor in the collision.

The court stated:

> "The risk to be foreseen was not that Kimberly would ride on the back of a motorcycle and be injured in a collision with an automobile. * * * The risk to be foreseen was more general—encompassed those generalized incidents and injuries created by discharging Kimberly, an impaired minor addicted to alcohol, without notice to parents or police, without the permission of her doctor, without providing alternative care, and with the knowledge that Kimberly could not care for herself." *Id.* at 252. (Citation omitted.)

Ultimately, the court held that because neither alcohol nor drugs had been involved in the accident, no reasonable trier of fact could conclude that Kimberly's injuries fell within the scope of the foreseeable risk posed by the discharge.

In this case, the generalized risk of harm created by defendant's negligence was that someone could be injured by the water that had collected inside the hospital. Had plaintiff slipped and injured herself as a result of the water, the element of "foreseeability" would be satisfied because of the

---

"A reasonable man could foresee that a fire started by him might spread to his neighbor's building and that in the effort to extinguish the fire his neighbor or a third person coming to his aid might be injured as a result of a variety of possible circumstances—by being burned, by falling off a ladder, by falling off a roof, by falling through a burned portion of the roof, or by other similar risks normally associated with fighting fires.

"It is less likely that an injury would occur as a result of falling through a skylight and even less likely that one would fall through a skylight because it was covered in a manner that made it appear to be a solid part of the roof. But, although such conditions may not be a common cause of injury, on the other hand it cannot be said that this setting for possible injury is so uncommon that a jury could not reasonably describe as foreseeable the risk of harm which it creates." 255 Or at 610.

inherent properties of water. Similarly, a factfinder could find, depending on the circumstances, that it would be reasonably foreseeable that it would be necessary for hospital personnel to clean up the water that had been allowed to seep into the hospital. Part of the process of cleaning up the water could require the emptying of containers used to collect the water. We conclude that risk of injury to people performing tasks such as that performed by plaintiff is not beyond the range of reasonable foreseeability. Thus, plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

The dissent would conclude that plaintiff's injury from lifting a "Wet Vac" full of water (water that had been negligently allowed to seep onto the premises) is beyond the risk of the generalized risk of harm caused by water. It asserts, "Plaintiff was not injured by the water." 146 Or App 622-23. In her deposition submitted in contravention of defendant's motion, plaintiff testified that she had used the Wet Vac on previous occasions to clean up spilled liquids at the hospital without incident or injury. However, the extent of the flooding and the surrounding emergency circumstances caused by defendant's negligence on this occasion required her to fill the Wet Vac to the "max," and the amount of water "was the most I've ever had in it to empty at one time." In this summary judgment proceeding, plaintiff is entitled to all reasonable inferences that can be drawn in her favor. One of those inferences is that her injury was caused by the weight of the water. Accordingly, the dissent's assertion that she was not injured by the water does not "hold water." The trial court erred when it held that plaintiff's injury was beyond any foreseeable risk of harm as a matter of law.

Reversed and remanded.

**WARREN, P. J.,** dissenting.

The question in this negligence case is whether the harm that befell plaintiff resulted from a risk created by defendant's negligence and is a harm for which reasonable people in our society would deem defendant blameworthy and impose liability. The trial court answered that question in the negative and entered summary judgment in favor of

defendant. On review, the majority notes that plaintiff, while acting within the course and scope of her employment, was not injured directly as a result of defendant's negligence, and that "[t]he negligently created condition no longer existed when she was injured." 146 Or App at 614-15. Nonetheless, the majority reverses the trial court because it believes that it was for the jury to decide whether the risk of plaintiff's injury was within the *general type of potential incidents* that made defendant's conduct negligent. I dissent because the majority's construct of "foreseeability" is overbroad and is tantamount to making defendant an insurer to the world at large—defendant's liability should not be predicated on the mere fact that plaintiff's injury is *traceable* to the hazard created by defendant's negligence. The event that causes plaintiff's injury must be identified as *one that falls within the scope of the risk* associated with the hazard created by defendant's negligence. The clearest description of what the concept of "foreseeability" is all about is found in *Buchler v. Oregon Corrections Div.*, 316 Or 499, 509, 853 P2d 798 (1993):

> "[F]oreseeability  is a method of describing how the law limits the circumstances or conditions under which one member of society may expect another to pay for a harm suffered. Within those limits, the jury or other factfinder may determine whether to award damages and in what amount. Outside those limits, the judge determines as a matter of law whether the facts alleged or the evidence of them is sufficient to support relief."

It is apparent that the principle of foreseeability involves more than simply being able to imagine the sequence of events that led to plaintiff's injury. It also involves a societal judgment call—was defendant's conduct such that, in the community's conception of fault, defendant ought to pay for plaintiff's injury? As a matter of law, the facts established here simply do not create liability under that foreseeability principle.

The majority's analysis begins with a discussion of two cases: *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 469 P2d 783 (1970) (an illustration of the type of harmful event in which the question of "foreseeability" was given to the jury), and *Hefty v. Comprehensive Care Corporation*, 307 Or 247,

766 P2d 1026 (1988) (an illustration of the type of harmful event that was not foreseeable as a matter of law). Having properly noted that negligence law in Oregon recognizes a demarcation between the role of the court and that of the jury in deciding the question of foreseeability, the majority then concludes that this case falls within the ambit of *Stewart*. I disagree and believe that this case is closer to *Hefty*.

The majority is correct in quoting *Stewart* for the proposition that the focus of our inquiry is not on "the predictability of the actual sequence of events." 146 Or App at 616 (quoting *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 13, 734 P2d 1326 (1987)). The majority, however, fails to heed that guideline. In this case, defendant's conduct led to the accumulation of water on the hospital floor. Simply because a chain of events may be imagined or conjured in which defendant's conduct plays a role does not automatically lead to the conclusion that the question of whether plaintiff's injury was foreseeable is one for the factfinder. There must also be something about defendant's involvement that convinces us, as deciders of questions of law, that reasonable persons in our society would somehow view that involvement as a culpable cause of plaintiff's injury. In formulating the precept of foreseeability in *Stewart*, the Supreme Court explained:

> "The premise upon which this standard is based is the concept that an actor should not be liable unless he is at fault in the legal sense. Although legal fault is not the exact equivalent of moral fault, the predicate is blameworthiness in some sense; the actor being regarded as blameworthy if his conduct is, according to community standards, generally considered as creating a danger to persons in the situation in which the plaintiff finds himself. * * *

> "* * * * *

> "*If, in our appraisal of the community's conception of fault, we find that the conduct in question clearly falls outside the conception, we are charged with the duty of withdrawing the issue from the jury.*" 255 Or at 608-09. (Footnotes omitted; emphasis supplied.)

Later, in concluding, the court stated:

"Equating likelihood of harm to fault, we are of the opinion that the likelihood of harm occurring as it did in this case is such that it might well be considered as blameworthy within the community's sense of fault. If we could say that defendant's conduct would not be deemed blameworthy according to the community's sense of fault, we would not permit the jury to impose liability." 255 Or at 611.

The Supreme Court's reasoning in *Hefty* is instructive as to the proper analytical procedure. There are two steps: first, the court must identify the risk to be expected from defendant's conduct, and second, it must then identify how far that risk extends:

"The risk to be foreseen * * * encompassed those generalized incidents and injuries created by discharging Kimberly, an impaired minor addicted to alcohol, without notice to parents or police, without the permission of her doctor, without providing alternative care, and with the knowledge that Kimberly could not care for herself.

"As regards the *scope of the risk* associated with Kimberly's alcoholism, Kimberly did not resume abusing alcohol or drugs after being discharged from the Unit. Neither the friend nor Kimberly took alcohol or drugs before the collision. Neither alcohol nor drugs factored into the events leading to the collision. * * *

"As regards the *scope of the risk* associated with Kimberly's impaired judgment and inability to control her behavior, here, too, the injuries *fell outside the scope of the risk*. Motorcycle riding is a common, everyday activity. Kimberly herself owned and rode motorcycles with her parents' permission. Engaging in an everyday mode of transportation would not appear to be an activity associated with the exercise of poor judgment or the inability to control one's behavior." 307 Or 252-53 (citations omitted; emphasis supplied).

In *Hefty*, the court affirmed the trial court's grant of summary judgment in favor of defendant on the grounds that no reasonable factfinder could find the risk foreseeable:

"[I]n an extreme case a court can decide that no reasonable factfinder could find the risk foreseeable. This is an 'extreme case.'" *Id.* at 253 (citation omitted).

In this case, the majority broadly identifies the hazard or risk of harm created by defendant's negligence as the risk that "someone [might be] injured by the water that had collected inside the hospital." 146 Or App at 617-18. It then proceeds with the second step of the analysis by addressing the scope of that generalized risk of harm: "Had plaintiff slipped and injured herself as a result of the water, the element of 'foreseeability' would be satisfied because of the inherent properties of the water." *Id.* After that point, however, the majority's analysis unravels as it rushes to conclude:

> "Similarly, a factfinder could find, depending on the circumstances, that it would be reasonably foreseeable that it would be necessary for hospital personnel to clean up the water that had been allowed to seep into the hospital. Part of the process of cleaning up the water could require the emptying of containers used to collect the water. We conclude that risk of injury to people performing tasks such as that performed by plaintiff is not beyond the range of reasonable foreseeability." *Id.*

The majority's analysis is fundamentally flawed—it fails to recognize that in formulating the precept of "foreseeability" the Supreme Court in *Stewart* "sought to formulate 'the line at which defendant's liability ends,' not where it began." *Fazzolari*, 303 Or at 13 (citation omitted).

The inherent properties of water are well known. The generalized hazards associated with the accumulation of water on a floor and around electrical equipment are also well known. Given the present facts, the majority failed to focus on, and limit its analysis to, the scope of the risk associated with those generalized hazards that defendant created. Although the water played a role in the incident, that is merely the first step in the analysis, not, as for the majority, the place to stop. The second question is whether, in the community's conception of fault, defendant should be expected to pay for this injury, occurring as it did. That is where the line that limits defendant's liability should be drawn.

The majority is correct in stating that the element of foreseeability would be satisfied if plaintiff slipped and

injured herself because of the water. The element of foreseeability might also be satisfied if the accumulated water was in contact with electrical equipment and she had been electrocuted during her attempt to collect the water. In this case, however, the majority acknowledges that those hazardous conditions associated with defendant's negligence were no longer present when plaintiff was injured. 146 Or App at 614-15. Plaintiff was not injured by the water. Defendant's liability should cease, at least, when the harm-producing event arises from the intervention of a force beyond defendant's control. I conclude, as did the trial court, that plaintiff's injury falls outside the scope of the risk of harm associated with defendant's negligence, as a matter of law.

I dissent.